## D. C. Chalfant, Appellant, *v.* Charles F. Goldbeck.

*Contract—Limited partnership association—Waiver.*

Defendant sold to plaintiff part of his interest in a limited partnership association, conditional that if plaintiff were not elected a member and manager of the company within sixty days, he should reassign said interest to defendant, who should thereupon refund the purchase money. Plaintiff, with the consent of all parties in interest, at once assumed control of the company, and continued to manage all its affairs, except signing checks, for seven months after the date of the assignment. He was not formally elected a member or manager. A part of the purchase money was represented by a note for sixty days which was paid by plaintiff at

maturity without objection. During the time that plaintiff managed the affairs of the company he received $25.00 per week for his services. Plaintiff subsequently made a reassignment of the interest to defendant, and brought suit to recover the purchase money on the ground that he had not been elected a member and manager as provided by the agreement. *Held*, that the question whether plaintiff and the other members of the association had not waived a formal election, was for the jury.

Argued Jan. 14, 1896.   Appeal No. 477, Jan. T., 1895, by plaintiff, from judgment of C. P. No. 3, Philadelphia County, March T., 1892, No. 73, on verdict for defendant.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit on an agreement in writing.

At the trial it appeared that Charles F. Goldbeck had a large interest in the Identity Indicator Company, Limited, a partnership association formed under the act of June 2, 1874 ; that on July 24, 1891, he assigned to D. C. Chalfant a one eighth interest in said company for the consideration of $250 in cash and a note for $250 payable in sixty days from the date of the agreement.   On the same day Goldbeck and Chalfant entered into an agreement in writing by which it was stipulated that if Chalfant should not within sixty days from date be elected a member and manager of the said company, Chalfant should reassign the one eighth interest to Goldbeck, and Goldbeck should refund to Chalfant the purchase money.   Chalfant was never formally elected a member or manager, but with the consent of all parties interested he assumed control of the affairs of the company, and continued to control them for seven months from the date of the assignment.   During this time he received $25.00 per week for his services.   On February 1, 1892, Chalfant executed a reassignment to defendant of said one eighth interest, and subsequently brought an action upon the contract to compel Goldbeck to refund the $500 purchase money paid.

The court charged in part as follows :

By the terms of the agreement the defendant contracted to have the plaintiff elected a member and a manager of this company within sixty days from the time when the contract was entered into.   At that time the plaintiff paid $250, and gave a note for a like amount as the consideration for the contract

into which they had entered. At the same time, or very soon afterwards, after the contract had been entered into by agreement and arrangement of all the parties in interest,—the plaintiff, the defendant, and all the parties interested in the company, —the plaintiff took possession of the business of the company, and it appears from the evidence that he exercised all the rights of manager, he controlled this whole business, he made contracts, he made arrangements for the conduct of the business, and he did everything except the mere formal signing of the checks, which was done by the treasurer.

Within the sixty days, and at no time after it, was he formally elected a member or manager. He had a right at the expiration of sixty days to do certain things, when he found that he was not formally elected—elected in accordance with the act of assembly—as a member and manager of the association; he could then have demanded from the defendant a strict literal and formal compliance with the contract. [He had a right, inasmuch as he was not formally elected a member and manager, to demand the return of the note, and the return of the money which he had paid. He could, at least, have made complaint of some kind to the defendant that he had not literally carried into effect the contract entered into with him. In addition to that he could have shown that he considered a literal compliance with the terms of the contract to be of importance by insisting upon its literal compliance or the return of the money; or he could have made manifest, in some way, that he considered the literal compliance with the contract of some use, importance and value to him. There is no evidence that he did any of these things, which the law gave him the right to do. If he considered it to be important that the contract should have been complied with, he should have made it manifest in some way.

How is the defendant to know, in the absence of any of these things which I have suggested, that the plaintiff regarded a literal compliance with the contract as being of any importance or as being a thing which he expected the defendant to do.] [7]

[The object and the purpose of the contract was to put him in a condition to know all about the company; as a member and manager he would have a right to investigate all its contracts, books and papers, and he would have something to say in the

management and control of it in that way.    That was evidently
the purpose of this contract.

He was willing to risk his money in the enterprise, consider-
ing the terms of the contract, if he was put in a position where
he would have an opportunity to say something in the control
and management of the business.

Now, it appears from the evidence that everything connected
with that business was made known to him.    He was its man-
ager.    He was everything connected with the business, as the
testimony shows, except that he had nothing to do with the
mere formal matter of signing the checks, which were drawn
upon it in the performance of its business.    So that you see he
was, in effect, placed precisely in a position such as he would
have been in, had there been a literal and formal compliance
with the contract, had he been formally elected a member and
manager.    In other words, he lost none of the advantages which
he would have derived from a literal compliance with the con-
tract.] [8]

[It appears from the evidence that he not only managed the
business almost exclusively, but that he was the only person
connected with it or interested in the business who received any
money out of it.    He regularly received his salary during the
sixty days and afterwards, for a period of six months; so long
as it had existence he regularly collected his salary at $25.00 a
week; and it appears that he was not only the only person who
got any money out of the concern, but that he was the last
person, and he drew the last penny which remained in the ex-
chequer of this company.] [9]

Of course, you will understand, every contract which is en-
tered into must be complied with, if not literally, at least sub-
stantially; and it is for you to say, and it is the only question
left for your determination in this case.—Did the plaintiff, from
his acts and conduct, and from all that occurred in the case,
acquiesce in the condition of affairs, as they existed?    Was he
satisfied, instead of being formally elected a member and man-
ager, with the condition of affairs which gave him absolute con-
trol over the business, and which gave him all the powers which
a member would have—all the powers of a manager, and in addi-
tion to that received a regular salary of $25.00 per week?    I
say, it is a question for you, whether you are satisfied from the

evidence that he was content with the condition of things as I
have stated it, and was not anxious or eager that there should
be a literal compliance with the terms of the contract? If he
was, then, it is too late for him, after the enterprise had failed,
to complain that there was not a strict literal compliance, in
accordance with the law, of the manner in which he should act
as a member and manager.

Plaintiff's points, which were all negatived, were as follows :

1. If the jury find that a condition of the contract between
the plaintiff and defendant was that the plaintiff should be
elected a member and manager of the said company in manner
prescribed by law, then the engagement of the plaintiff as a
business manager of the Identity Indicator Company, upon a
salary for which he rendered services, was not a fulfillment of
the contract ; the words "a manager " in the contract being used
in the same sense in which they are used in the act of assembly
referred to in the contract, according to which a managership
implies membership in the company, while no such implication
arises out of the business managership held by the plaintiff,
and, the plaintiff having retransferred to the defendant the
interest sold to him, the verdict must be for the plaintiff. [1]

2. That the position of a general business manager held by
the plaintiff is a very different thing from the position of a
manager such as is provided for by the act of assembly, under
which the Identity Indicator Company is organized. The fact,
therefore, that the plaintiff acted as general manager, does not
prove that the plaintiff was elected a manager of the company
or even a member of the same, and, there being no other evi-
dence of such election, the verdict must be for the plaintiff. [2]

3. That if the jury find from the evidence that no meeting of
the Identity Indicator Company, at which the plaintiff was
elected a member and manager of the said company was ever
held, and that, after the expiration of sixty days, the plaintiff
reassigned to the defendant the interest in the said company
assigned to him, the said plaintiff, and further that within
sixty days from its date the defendant indorsed the note of the
plaintiff for the sum of $250 to a third person, which note was
afterwards paid by the plaintiff, the verdict must be for the
plaintiff in the sum of $500 with interest from the date of the
reassignment. [3]

4. That under the written contract given in evidence in this case, unless within sixty days from the date thereof the plaintiff was elected a member of the Identity Indicator Company, in the manner provided by law, and also within the same space of time was elected as manager of the same, the plaintiff had a right to reassign the interest conveyed to him by the defendant, and to have back from the defendant the sum of $250, and his (the plaintiff's) note for a like amount. And as the plaintiff was not so elected a member of said company or a manager thereof, and as the defendant parted with the plaintiff's note, whereby the plaintiff was compelled to pay the amount of said note to a third person, and as the plaintiff has reassigned to the defendant his interest in the Identity Indicator Company, the plaintiff is entitled to recover from the defendant the sum of $500 with interest from the date of the reassignment, and the verdict must be for the plaintiff for that amount. [4]

5. That under all the evidence the verdict must be for the plaintiff for the sum of $500, with interest from the date of the reassignment of the defendant. [5]

6. The sale being by its terms conditional, the mere delay to claim that it had not become absolute or to demand its fulfillment, even if found by the jury, does not constitute a defense to this action, and the verdict must be, in the absence of any other defense, for the plaintiff. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–9) instructions as above, quoting them; (10) that the charge as a whole was misleading and unfair.

*Henry Budd*, for appellant.—It is not pretended that there was an express waiver, and it can hardly be contended that there was any technical waiver at all in view of the rule that a waiver to be binding must be made distinctly, intentionally, and with full knowledge of the rights which it is intended to waive: Darnley v. London etc. R. R., L. R. 2 H. L. 57; Belknap v. Bender, 75 N. Y. 453.

No one can claim the benefit of an estoppel unless he can show that he has been led to perform an act or omit the doing of one whereby some loss accrued to him by reason of the act or

omission claimed to work the estoppel: Linnard's App., 21 W. N. C. 40; Patterson v. Lytle, 11 Pa. 53; Wright's App., 99 Pa. 425; Cochran v. Pew, 159 Pa. 184; Liggett v. Shira, 159 Pa. 350.

It is error to submit the evidence and theory of one party prominently and not call attention to the main points of the other party's case: Pa. Canal Co. v. Harris, 101 Pa. 80; Pierson v. Duncan, 162 Pa. 187; Nieman v. Ward, 1 W. & S. 68.

*Albert E. Peterson*, for appellee, cited, Globe Refining Company's Estate, 151 Pa. 558.

PER CURIAM, January 27, 1896:

In view of the testimony tending to prove that literal and formal compliance with the terms of the contract relating to plaintiff's election as a member and manager of the "Identity Indicator Company" had been waived by him as well as those interested in the company, the learned trial judge was warranted in submitting the question of waiver to the jury. Without referring specially to the testimony, it is sufficient to say that the facts and circumstances properly in evidence tended to prove such mutual waiver, and thus presented a question of fact for the exclusive determination of the jury. It follows that there was no error in refusing plaintiff's points recited in the first six specifications, nor in charging the jury as set forth in the remaining specifications. Considered as a whole, in the light of the testimony, the charge was neither unfair, nor misleading. The question of mutual waiver, on which the case hinged, was properly submitted to the jury, and the presumption is that it was rightly determined in favor of defendant. We find nothing in either of the assignments of error that requires further comment.

Judgment affirmed.